IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-02562-REB-BNB
Criminal Action No. 04-cr-00185-REB

UNITED STATES OF AMERICA,

v.

MICHAEL T. SOMERVILLE,

Movant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the **Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody** [Doc. # 105] (the "Motion") filed by Michael Somerville (the "movant") on December 10, 2007. I respectfully RECOMMEND that the Motion be DENIED.

**I. BACKGROUND**

The Tenth Circuit Court of Appeals summarized the background facts of the criminal case underlying the Motion as follows:

> In a series of controlled buys in Colorado Springs, Colorado, a confidential informant, Anthony Johns, purchased crack cocaine from Somerville. Specifically, on May 6, 2003, Johns met Somerville in the parking lot of a fast-food restaurant and purchased from Somerville 12.7 net grams of crack cocaine. Johns subsequently bought from Somerville 25.9 grams of crack cocaine on May 7, 2003, 24.5 grams of crack cocaine on January 16, 2004, and 47.2 grams of crack cocaine on February 6, 2004.
>
>> FN1. Ultimately 150.1 grams of crack cocaine or its equivalent were attributed to Somerville. This included some crack cocaine found in a bag Somerville had at the time of his arrest and some

crack cocaine Somerville sold to another individual just prior to Somerville's arrest.

Law enforcement authorities arrested Somerville a few hours after this last sale. During the execution of a federal search warrant at Somerville's residence on February 6, 2004, law enforcement authorities found numerous rounds of live ammunition.

During his trial, both Somerville and the confidential informant, Johns, testified. Concerning the January 16, 2004, drug transaction, Johns testified that he saw a .40 caliber weapon at the residence where the controlled buy took place and where Somerville was cooking crack cocaine. Johns also surreptitiously recorded the conversation he had with Somerville during that transaction. That recording was played to the jury.

> FN2. The record on appeal contains neither a copy of the audio tape of the conversation, nor a transcription of it. However, the government's brief contains an excerpt from the transcription, and Somerville does not dispute the accuracy of the government's excerpt. We therefore assume that it accurately reflects the conversation between Johns and Somerville. Moreover, we note that the district court heard the audio tape and presumably read the transcription. Somerville argues that we should reverse the district court's firearm possession enhancement because the tape of the conversation between himself and Johns was "confusing." Appellant's Op. Br. at 6. He has significantly undermined his ability to make that argument because he has failed to include the tape or a transcript of it in the record before us.

After the jury returned its guilty verdict,[1] sentencing proceedings commenced. The probation office prepared a presentence report ("PSR"), which calculated Somerville's base offense level as thirty-four, which it recommended increasing by two levels,

---

[1] The movant was found guilty of four counts of distribution of five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and one count of possession of ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). United States v. Somerville, 179 Fed.Appx. 460, 460 (10th Cir. May 3, 2006), *cert. denied*, 127 S.Ct. 736 (2006).

pursuant to United States Sentencing Commission, Guidelines Manual ("USSG"), § 2D1.1(b)(2) (Nov.2004), because Somerville possessed a dangerous weapon during the January 16, 2004, drug transaction, and by another two levels, pursuant to USSG § 3C1.1, because Somerville obstructed justice. This latter allegation was based upon Somerville's testimony at trial and upon statements he had made to the police during its investigation into this case. These enhancements resulted in a total offense level of thirty-eight. All parties agreed that, as the PSR stated, Somerville qualified as a career offender under USSG § 4B1.1(a) because of several prior felony convictions for controlled substance offenses, although, because his basic Guideline sentencing range was more severe, that Guideline sentencing range applied rather than the career offender provisions. The PSR also calculated a criminal history category of IV. This yielded an advisory Guideline sentencing range of 324 to 405 months. The PSR recommended a sentence of 324 months, followed by five years of supervised release.

Somerville filed objections to the PSR, arguing that there was "no evidence that he lied at trial, nor did he provide 'materially false information to a judge.'" Objections by the Def., PSR add. at A-1, R. Vol. XI. Additionally, Somerville asserted that "[a]s the Court heard the testimony at trial, it is in a better position than the probation officer to determine the applicability of this adjustment." Id. Somerville also objected to the two-level increase for possession of the firearm during the January 16, 2004, drug transaction, arguing there was "insufficient evidence" and again deferring to the district court's better ability, as compared to the probation office, to assess the applicability of this enhancement. Id. Somerville filed another objection to the PSR, reiterating the above objections and more fully explaining why he felt he had not obstructed justice.

The district court overruled his objection to the obstruction of justice enhancement, stating the following:

> I presided over all pretrial and trial proceedings, and frankly was amazed and nonplussed simultaneously at the ease and way in which Mr. Somerville decided what then at the moment would be the truth at the time. He confessed that he lied when convenient or necessary to the authorities, including the police and then, whether he realized it or not, to the trier of fact and to the sentencing

3

> > Court. That is obstruction of justice. That is the quintessence of obstruction of justice.
>
> Tr. of Sentencing at 14, R. Vol. IV. With respect to the firearm enhancement, the court also overruled Somerville's objection, stating the following:
>
> > I, too, listened to the trial evidence. And I would have found by proof beyond a reasonable doubt, not merely a preponderance of the evidence, that during the relevant transaction that the .40 caliber handgun was present, and not surprisingly so. My own conclusion was that Mr. Somerville at that time wanted [Johns] ... to understand that he was armed, that he did have firearms, and what could be more logical in a gentleman who has chosen a philosophy and a vocation of drug-dealing to warn clients, associates, and the world alike that [he is] armed and dangerous and prepared to protect [his] drug business.
>
> Id. at 15.
>
> The district court therefore adopted the findings and conclusions of the PSR and calculated a total offense level for Somerville of 38, which included the two disputed two-level enhancements. After considering the sentencing factors contained in 18 U.S.C. § 3553(a), as required by United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), including the advisory Guidelines range of 324 to 405 months, the district court sentenced Somerville to 324 months.

United States v. Somerville, 179 Fed.Appx. 460, 461-62 (10th Cir. May 3, 2006), *cert. denied*, 127 S. Ct. 736 (2006).

The movant appealed his sentence. He argued that "the district court erred in: (1) adding two levels to his Guidelines offense level for possession of a firearm where 'the weapon was not recovered and the only evidence of a weapon was the tape recorded conversation with [Johns]'; and (2) adding two levels to his Guidelines offense level when the court found Somerville had

4

obstructed justice during his trial testimony because '[w]hatever misstatements [Somerville] may have made were minor in comparison to his clear admission to guilt in the crimes for which he was charged.' Appellant's Op. Br. at 5." Somerville further argued that, "without those two enhancements, his total offense level would have been 34 and, applying the career offender provisions, his Guidelines sentencing range would have been 262 to 327 months. 'Had the court determined the guideline ranges correctly, it may have been inclined to impose a lower sentence despite its comments to the contrary.'" Id.

The appellate court affirmed the movant's sentence. Id. at 463-64. The Supreme Court denied certiorari on December 4, 2006. Somerville v. United States, 127 S. Ct. 736 (2006).

The movant now asserts four claims for ineffective assistance of counsel:[2]

Claim One alleges that the movant received ineffective assistance of counsel because counsel failed to investigate; explain the terms of a plea agreement; raise factors in mitigation of punishment; inform the movant of the "terms of law in relation to the facts"; and make an effective argument on appeal. *Motion*, pp.3- 4.[3]

Claim Two alleges that the movant received ineffective assistance of counsel because counsel failed to argue at sentencing and on appeal that a certain amount of cocaine base (crack cocaine) found in his possession was for personal use and should not have been included in

---

[2]Any other claims the movant may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

[3]The Motion is not consecutively paginated. Therefore, I cite to the page numbers as they are assigned by the court's docketing system. In addition, I quote the movant's Motion as written, without correction or acknowledgment of error.

determining the total amount of cocaine base for which he was held accountable for sentencing purposes.

Claim Three alleges that the movant received ineffective assistance of counsel because counsel failed to argue "as a matter of first impression" that "the sentencing Court should exclude from it's calculation the amount of drugs that flow from Sentencing Entrapment and Sentence Factor Manipulation."

Claim Four alleges that the movant received ineffective assistance of counsel because counsel failed to assert at sentencing and on appeal allegations he made during his testimony at trial that recorded conversations about a firearm (which were played for the jury) had been altered by the government.

## II. ANALYSIS

As a preliminary matter, I must liberally construe the Motion because the movant is proceeding *pro se*. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, I cannot act as advocate for a *pro se* litigant. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

When reviewing a claim for ineffective assistance of counsel, I start with the presumption that counsel's conduct was constitutionally effective. Strickland v. Washington, 466 U.S. 668, 690 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. To prevail on a claim for ineffective assistance of trial or appellate counsel, a movant must affirmatively show (1) that counsel's performance was deficient or, in other words, "fell below an objective standard of reasonableness," and (2) that counsel's errors prejudiced petitioner, that is to say "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687-88. Because the purpose of the Sixth Amendment's guarantee of the right to

6

counsel is to ensure that a criminal defendant receives a fair trial, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. at 691. "This court may address the performance and prejudice components in any order, but need not address both if [movant] fails to make a sufficient showing of one." Cooks v. Ward, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

### A. Claim One

In Claim One, the movant summarily alleges that "[c]ounsel was ineffective for failing to conduct a pretrial investigation into discovery and circumstances of this case"; "Counsel failed to develop, Mitigate, and-or raise factors in Mitigation of punishment of this case"; "Somerville was prejudiced because counsel failed to inform, communicate, or consult with respect to the point scoring underlying his sentence"; "[b]ut for Counsel's lack of Lawyering defendant would have received acceptance of responsibility points and the longer sentence after trial similarly resulted from that very fact of a trial itself. A fact that was brought on by Counsel's deficient assistance"; "Counsel failed to inform Somerville of terms of law in relation to the facts"; "Appellant Counsel's argument on Direct Appeal was ineffective" and "Counsel's course of conduct enhanced defendant's base offense level reulting in a longer sentence."

*Motion*, pp. 3-4.

7

The movant does not provide any factual support for these allegations, nor does he cite to any evidence in support of these claims. These conclusory allegations are not sufficient to sustain an ineffective assistance of counsel claim.[4]

The movant further alleges that "Counsel failed to inform Somerville of the terms of offered Plea Bargain. Somervile never had the oppurtunity to consider intellegently the Plea offer and to make an informed decision about it" and "Trial Counsel rendered ineffective assistance by not informing Somerville of details of Plea Bargain"

To state a claim for ineffective assistance of counsel based on counsel's failure to inform him of the terms of the plea bargain, the movant must demonstrate that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). The movant's conclusory allegations fail to meet this burden.

Moreover, the record does not support the movant's claim. In its response to the movant's objections to his Presentence Report, the government provided evidence which shows that on June 11, 2004, a federal agent and an Assistant United States Attorney conducted a debriefing of the movant in the presence of his attorney, Martin Stuart. *Doc. #74*, pp. 3-4 and Ex. 2. During the debriefing, the movant stated that he had a .44 caliber revolver that was stored at his mother's residence, and he identified and provided other information about his sources for

---

[4]The movant's allegations regarding failure to conduct a pretrial investigation are reasserted in Claim Four; his allegations regarding failure to raise factors in mitigation of his punishment are reasserted in Claim Three; and his allegations regarding the increase of his base offense level are reasserted in Claim Two. Although I do not view these allegations, without more, as sufficient to state a claim for ineffective assistance of counsel in Claim One, I address them in my analysis of Claims Two, Three, and Four.

drugs to resell and to use in the manufacture of crack. He also agreed to contact his mother and arrange for her to surrender the revolver to law enforcement officials. Based on the statements made at the debriefing, the government made a plea offer to the movant contingent upon his producing the .44 caliber handgun.

On June 15, 2004, the movant filed a Notice of Disposition informing the court that "the parties had reached a disposition" in the case and requesting that the court set a date for a change of plea. *Doc. #19*. On July 28, 2004, the movant filed a motion to continue the change of plea hearing based in part on the fact that the "proposed plea agreement in Mr. Somerville's case involves several complex issue requiring significant consultation with defense counsel." *Doc. #22*. On August 26, 2004, movant's counsel filed a motion to withdraw in which he stated that he had received a letter from the movant requesting that he do so. *Doc. #24*.

On September 10, 2004, John Mosby was appointed as the movant's second counsel. *Doc. #28*. On October 1, 2004, Mr. Mosby filed a motion to withdraw in which he stated that (1) he had contacted the prosecutor to ascertain whether the plea offer previously made by the government would still be honored; (2) he had attempted to meet with the movant on September 30, 2004, "to discuss the case, a possible plea agreement and prepare for trial"; (3) the movant "refused to discuss the plea agreement" or discuss trial preparation; and (4) before walking out of the interview room, the movant directed him to file a motion for a bond and withdraw from the case. *Doc. #31*.

Mr. Mosby was permitted to withdraw, *Docs. #35 and #36*, and Attorney Robert S. Berger was appointed as the movant's third attorney on October 19, 2004. *Doc. #37*. On November 3, 2004, the movant filed a motion to continue the trial which had been set for

November 8, 2004. *Doc. #38*. In the motion, Mr. Berger stated as grounds that "Counsel has conferred with Mr.Somerville, AUSA Phillip Brimmer, and prior counsel. Settlement negotiations with the government have been renewed, but will not be completed by November 8." Id.

Further plea negotiations were obviously unsuccessful, and a jury trial commenced on April 11, 2005. The movant admitted at trial that he had lied about storing a .44 caliber handgun at his mother's house and that he had made up the names of his sources in order to induce the government to agree to a "time cut" in the plea bargain he was seeking. Id.; *Doc. #92*, p. 613-16.

The record shows that all three of the movant's attorneys attempted to discuss plea negotiations with the movant. The record does not contain any evidence, and the movant does not provide any, to show that any of his attorneys failed to inform him of the terms of a plea agreement. To the contrary, the record shows that the mavant refused to discuss a possible plea agreement with Mr. Mosby and that he lied about his ability to meet key terms of an agreement offered by the government.

The movant has not demonstrated that any of his counsels' performances were unreasonable with regard to a plea agreement, nor has he demonstrated a reasonable probability that, but for counsels' errors, he would have pleaded guilty and would not have insisted on going to trial. See Miller, 262 F.3d at 1072. Consequently, he has failed to establish a claim for ineffective assistance of counsel.

### B. Claim Two

In Claim Two, the movant alleges that he received ineffective assistance of counsel because counsel failed to argue at sentencing and on appeal that 25.7 grams of crack cocaine found in a black bag in his possession was for personal use and should not have been included in determining the total amount of cocaine base for which he was held accountable for sentencing purposes.

During direct examination at trial, the movant testified that he regularly used various drugs including marijuana, cocaine powder, crack cocaine, LSD, and hallucinogenic mushrooms. *Doc. #92*, p. 567. He further testified that he typically purchased an ounce of cocaine powder at a time from his suppliers to make into crack cocaine to sell, and he always kept some of the cocaine for himself. Id. at 577-78.

He testified that when he was arrested on February 6, 2004, officers confiscated a black bag which contained his "personal things" including 25 grams of pulverized crack cocaine ("shake") that he made by grinding up left-over crack cocaine. Id. at 578-82. He stated that he intended to use the "shake" found in his bag by adding it to marijuana to form "primos," which he could smoke. Id. at 580-82, 631.

However, the movant testified on cross-examination that he usually carried around with him only one rolled marijuana "cigarillo" (a hollowed-out cigar filled with "marijuana or whatever") to be smoked by himself on a "hectic day," but that he happened to be caught with all his money and "personal stuff"--his "personal sit-down, enjoy-yourself, get-high stuff"--in the bag, because he "maybe even was planning to go on a trip or something." Id. at 622-23. On further cross-examination, he admitted that the black bag did not contain a marijuana pipe,

rolling papers, or other paraphernalia consistent with personal use of the pulverized crack cocaine or cocaine powder found in the bag (alone or as additives to marijuana). Id. at 623-24.

In addition, a police officer testified that the bag also contained currency, some of which had been marked and prerecorded by law enforcement as "buy" money. *Doc. #91*, pp. 311, 327. Indeed, there was testimony by a government informant and police officials that the movant had distributed approximately 53.5 grams of crack cocaine, using the same bag to carry the cocaine, prior to being arrested on February 6, 2004. *Doc. 90*, p. 157-59; *Doc. 91*, p. 260-65, 305; *Doc. #92*, p. 619.

Under these circumstances, the movant has not overcome the strong presumption that counsel was using sound trial strategy when he did not pursue the movant's "personal use" argument at sentencing and on appeal. The amount of "shake" crack cocaine found in the black bag, 25.7 grams, was equivalent to nearly an entire purchase from one of the movant's suppliers (one ounce = 28.35 grams). This amount does not suggest personal use, particularly if, as the movant testified, he used the pulverized crack cocaine only as an additive to marijuana and that he usually carried with him only one rolled marijuana "cigarillo." Moreover, there is nothing except the movant's speculation to indicate that his sentence would have been any different if his counsel had made the suggested argument to the sentencing court and the appellate court. Therefore, the movant has failed to meet either prong of the Strickland standard with regard to Claim Two.

### C. Claim Three

In Claim Three, the movant alleges that he received ineffective assistance of counsel because counsel failed to argue "as a matter of first impression" that "the sentencing Court

12

should exclude from it's calculation the amount of drugs that flow from Sentencing Entrapment and Sentence Factor Manipulation."

This issue was raised by the movant during his direct examination at trial:

> Q. Mr. Somerville, you have pled not guilty to the seven charges here, correct? In this case?
>
> A. That's correct. Only it was because you are presumed innocent until found guilty, proven guilty, and I am guilty of Count 1, and I accept responsibility for Count 2, but the rest – the nature of the evidence and the – the nature of the evidence is just – I can't plead guilty to Counts 3, 4, 5, 6 and 7.
>
> The nature of the evidence was obtained – the reasons present, the conduct, I just feel the jury has the power to decide at what point in the investigation did he have enough evidence to arrest me. As he did the title of the investigation. He sold 14 grams, they arrested him. I sold 14 grams, and didn't want to sell two or one ounces the second sell, and they just kept doing it over and over again. For no other reason than to make me major person in the case.
>
> The title of the investigation was Woo. They flushed more dope than I ever had. For whatever reason, they just bought buy after buy to get me over a 50-gram amount, which is a minimum of twenty years, and since then, because I come to trial, I have been enhanced to a life sentence now because of these offenses.

*Doc. #92*, pp. 590-91.

The prosecutor objected to this testimony, the court sustained the objection, and the defense counsel indicated that he had no further questions on direct examination. The movant then stated, "I would like to – I still have some things in my notes that I would like to cover based on testimony." <u>Id.</u> at 591. The court permitted the movant to confer with his attorney, and counsel was granted leave to reopen direct examination. The movant argued to the jury that he was the victim of "sentencing manipulation or sentencing entrapment":

> Q. What else did you have to say?

13

> A. I just have to say that I pled not guilty to the entire indictment because you are presumed innocent. However, I am guilty of Count 1, and I accept responsibility for Count 2.
>
> The Counts 3, 4, 5, 6 and 7, they are outrageous official conduct that overcomes the will of an individual predisposed to deal in small quantities for the purpose of increasing the amount of drugs and the result intention [sic] of the entrapped defendant. It's called sentencing manipulation or sentencing entrapment. It occurs when a defendant, although predisposed to commit [a] minor or lesser offense, is entrapped to committing a greater offense subject to greater punish [sic].
>
> And I just want the jury to know you have the power to dismiss – I am going to read from my notes now. You have the power to dismiss the counts you find excessive. You have the power to determine at what point in this investigation –

Id. at 592-93.5

The movant's statement to the jury was then interrupted by an objection from the prosecutor on the ground that it involved legal conclusions and was not proper testimony from the witness. The court observed that the statement was "essentially in the form of final or closing argument" and gave the movant another opportunity to confer with his attorney. Upon resuming his testimony, the movant stated, "I pled not guilty because I was not a high-level drug dealer and I felt the sentence warranted was not just for that many offenses." Id. at 593-94.

The sentencing entrapment/sentence factor manipulation argument was made to the jury by the movant on direct examination. The jury did not accept the movant's argument.

The movant's counsel alluded to the argument in Defendant's Objections to Presentence Report. *Doc. #75,* Defendant's Objections to Presentence Report (attached to the Presentence Investigation Report), p. 2, ¶ 3. The court rejected the movant's sentencing entrapment argument:

14

> I respectfully reject the defendant's continued assertion, one that was broached at trial and reiterated today during the sentencing hearing. No defendant has a constitutional right to be arrested at any given point in time. Anyone who chooses to habitually, continually violate the law in a particular way may not come before a court, this or any other, and say had they only arrested me sooner, they would have saved me from myself, although I have chosen this as my life style and vocation. Again, that argument simply does not hold water.

*Doc. #86*, p. 18.

In United States v. Lacey, 86 F.3d 956, 963 (10th Cir. 1996), the Tenth Circuit Court of Appeals addressed a defendant's claim of "sentence factor manipulation" and "sentence entrapment." The circuit court stated that these defenses "should be analyzed under our established outrageous conduct standard." Id. "[T]he relevant inquiry is whether, considering the totality of the circumstances in any given case, the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice." Id. at 964 (internal quotations and citation omitted). Outrageous conduct is "an extraordinary defense reserved for only the most egregious circumstances." United States v. Mosley, 965 F.2d 906, 910 (10th Cir. 1992).

"[I]t is not outrageous for the government to infiltrate an ongoing criminal enterprise, or to induce a defendant to repeat, continue, or even expand previous criminal activity." United States v. Pedraza, 27 F.3d 1515, 1521 (10th Cir. 1994). "In inducing a suspect to repeat or expand his criminal activity, it is permissible for the government to suggest the illegal activity, provide supplies and expertise, and act as both a supplier and buyer of illegal goods." Id. Further, "[l]aw enforcement officials are often justified in increasing the scope of criminal activity in a sting operation, especially when attempting to ensnare those persons higher up on

15

the distribution ladder who are ultimately responsible for the supply of drugs." Lacey, 86 F.3d at 965.

The official conduct alleged by the movant does not rise to the level of outrageous behavior. Accordingly, the movant has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness or that counsel's deficient performance prejudiced his case when counsel failed to argue "as a matter of first impression" that "the sentencing Court should exclude from it's calculation the amount of drugs that flow from Sentencing Entrapment and Sentence Factor Manipulation."

### D.  Claim Four

In Claim Four, the movant alleges that he received ineffective assistance of counsel because counsel failed to argue at sentencing and on appeal that the prosecution played a recording that was "incomplete, broken, deteted, and edited." *Motion*, p. 13. The movant alleges that the "unadulterated versions" of the recording contained mitigating evidence regarding the sentence enhancement he received for possession of a firearm.[5] Id.

The government asserts, and the movant does not dispute, that the recording at issue is a surreptitiously recorded conversation between the movant and a confidential informant, Anthony Johns, during the drug transaction on January 16, 2004. *Government's Response to Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in*

---

[5]Despite objections from the movant, the district judge increased by two points the movant's base offense level because the movant possessed a dangerous weapon during the January 16, 2004, transaction. *Doc. #86*, pp. 15-21; *Doc. #75,* Presentence Investigation Report, p. 4.

16

*Federal Custody* [Doc. #109] (the "Response"), p. 18. The transcript of the conversation contains the following dialogue:

>Movant: Get a 40 . . . Smith & Wesson . . . man . . . just so you know . . . you know me . . . you want a 40 I'll get you a 40.
>
>Mr. Johns: Where did you get that motherfucker from?
>
>Movant: One fucking um . . . One white dude.
>
>Mr. Johns: Brand new?
>
>Movant: Yeah. Here's the box.
>
>Mr. Johns: How much?
>
>Movant: A ball.
>
>Mr. Johns: Huh?
>
>Movant: A ball.
>
>Mr. Johns: Hey can I get one?
>
>Movant: It ain't no regular hustle. You just here to look.

*Motion*, Ex. D, second consecutive page.[6]

The movant does not make a comprehensible argument regarding the "mitigating evidence" in the "unadulterated versions" of the recording.[7] *Motion*, pp. 12-14. Moreover, it is clear from the record that the recording is not the only evidence which supports a finding that a

---

[6]An excerpt of the transcript was admitted at trial as Government's Exhibit 79. *Response*, p. 19. The transcript is attached to the movant's Motion as Exhibit D and is also attached as Exhibit 3 to the Government's Response to Defendant's Objections to Presentence Report [Doc. #74].

[7]On direct examination at trial, the movant testified as to his version of the conversation that took place during the January 16, 2004, drug transaction. *Doc. #92*, pp. 587-88. However, his testimony did not address the firearm.

firearm was present during the January 16, 2004, drug transaction. Indeed, Mr. Johns testified at trial that when he entered the house in which the transaction occurred, the movant was converting powder cocaine into crack cocaine and that a .40 caliber firearm was sitting on top of a box. *Doc. #91*, p. 255 -56. Mr. Johns also testified that the recording of the transaction and the transcript of the recording (Trial Exhibit 79) were accurate. Id. at p. 257. In addition, Special Agent James Deir testified that the recording had not been altered in any way and had merely been transferred from magnetic tape form to compact disc form in order to utilize the technology available in the courtroom. *Doc. #92*, p. 632-33.

Further, in the movant's objections to the Presentence Report, movant's trial counsel challenged the two-level increase for possession of a firearm on the basis that there was insufficient evidence to support the increase. *Doc. #75,* Defendant's Objections to Presentence Report (attached to the Presentence Investigation Report), p. 2, ¶ 4.

In overruling the movant's objection to application of the firearm enhancement, the district judge stated:

> With respect to the defendant's objection concerning enhancement of the offense level for a firearm, again, I approve, adopt, and incorporate the reasons stated, arguments advanced, and authorities cited again by the probation department in its report and the government in its sentencing statement in response to objections. I, too, listened to the trial evidence. And I would have found by proof beyond a reasonable doubt, not merely a preponderance of the evidence, that during the relevant transaction that the .40 caliber handgun was present, and not surprisingly so. My own conclusion was that Mr. Somerville at that time wanted the gentleman, whose name escapes me momentarily, to understand that he was armed, that he did have firearms, and what could be more logical than a gentleman who has chosen a philosophy and a vocation of drug-dealing to warn clients, associates, and the world alike that I am armed and dangerous and prepared to protect my drug business.

*Doc. #86* p. 15-16.

In addition, the record shows that the movant's counsel also challenged on direct appeal this court's application of the firearm enhancement. The circuit court stated:

> We have carefully reviewed the record in this case and conclude that there is ample evidence supporting the two enhancements found by the district court. Indeed, with respect to the possession of a firearm enhancement, not only does the excerpt from the taped conversation between Somerville and Johns clearly indicate that Somerville had a .40 caliber firearm, but Johns . . . testified that when he entered the house where the January 16, 2004, drug transaction took place, he saw a .40 caliber weapon "[s]itting on top of a box." Tr. of Jury Trial [Doc. 91] at 256. We find no clear error in the district court's application of that enhancement.

United States v. Somerville, 179 Fed. Appx. 460, 463 (10th Cir. May 3, 2006), *cert. denied*, 127 S. Ct. 736 (2006).

The movant has failed to demonstrate that counsel's performance fell below the constitutional minimum when he did not attempt to argue at sentencing and on appeal that the firearm enhancement was wrongfully imposed because it was based on a recording that was "incomplete, broken, deteted [sic], and edited."

### III. CONCLUSION

I respectfully RECOMMEND that the Motion be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A

party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated April 28, 2010.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge